THOMAS PORTER, PROSECUTOR, v. ELMER C. WAIN-
RIGHT, JUSTICE OF THE PEACE OF THE COUNTY OF
MONMOUTH, RESPONDENT.

Argued May 3d, 1927—Decided November 11, 1927.

Before Justices TRENCHARD and KATZENBACH.

For the prosecutor, *Alston Beekman.*

The opinion of the court was delivered by

KATZENBACH, J.   This case is before this court on a writ
of *certiorari* directed to Elmer C. Wainright, a justice of the
peace of the county of Monmouth.   The writ brings up the
record of the conviction of the prosecutor upon a complaint
under the act concerning the welfare of children (*Pamph. L.*
1915, *p.* 441) made by Stella Herman for the failure of the
prosecutor to provide for and support two minor children,
three and one-half and two years of age respectively.   The
proceeding was commenced by a sworn complaint made by
Stella Herman.   Upon the filing of the complaint a warrant
for the prosecutor was issued.   He was apprehended.   He
entered a plea of not guilty.   A hearing was had on November
15th, 1926.   The testimony offered by the said Stella Herman
was that the prosecutor was the father of the said two children;
that she was not married to Porter; that he had been sending
her money each week for the support of the children; that he

had requested her to move to New York, and had promised that if she did so then he would marry her; that he had put this off notwithstanding she had moved to New York; that he now refused to send her any more money, and that she had no place to go, and was at the present time stopping with an acquaintance at Locust, New Jersey.

A witness by the name of Louis Kaplan was called and exhibited what he referred to as true copies of original money order telegrams that Porter had sent to the complainant. These were admitted over objection. The court adjudged ·Porter guilty and directed him to pay $15 a week to the Monmouth county organization for social service.

In the depositions taken under the writ, which were laid before us without objection, the prosecutor testified that Stella Herman was not a resident of the State of New Jersey; that . he had not submitted voluntarily to the jurisdiction of the justice's court; that he had never requested Stella Herman to move to the State of New York; that he was never married to her and never held her out as his common law wife, and that he was not the father of either of the two children.

The first ground of attack upon the ·proceedings is that the justice lacked jurisdiction to entertain the proceedings. We think this so. The second section of the act provides that "any parent, guardian or person having the care, custody or control of any child or children, who shall abuse, abandon, be cruel to or neglectful of said child or children, shall be deemed to be guilty of cruelty and neglect of children," and upon conviction thereof, be fined, &c. The act defines "the person having the care, custody or control of any child" to mean any person who has assumed the care of a child, or any person with whom a child is living at the time the offense is committed. The prosecutor was not a guardian of the children and he did not have the care, custody or control thereof, as they were residing with their mother. The word parent means father or mother. *Snyder* v. *Greendale Land Co.*, 48 *Ind. App.* 178. This word is used in the child welfare as the recognized and admitted father or mother. The prosecutor denied his parentage of the children. He was unmarried. It never had

been judicially determined that he was the putative father of the children who were, according to the mother's testimony, bastards. To make the order in the present proceeding the justice determined, in effect, that the prosecutor was the putative father of the children. The Child Welfare act was never intended to permit such a finding of fact. To sanction this would virtually repeal the proceedings prescribed by the act for the maintenance of bastard children (Revision of 1898). 1 *Comp. Stat., p.* 184. It would deprive one charged with being the putative father of a bastard child of the right of trial by jury and the right of an appeal provided for in the act for the maintenance of bastard children. In the present proceeding the uncorroborated testimony of Stella Herman that the prosecutor was the father of the children was accepted by the justice. Where one is proceeded against as a parent under the Child Welfare act the question of parentage must be undisputed.

The record states that the court adjudged the defendant guilty as charged in the complaint. A reference to the complaint shows that the prosecutor was not charged with the violation of any particular section of the act. The complaint was faulty and therefore the adjudication respecting the defendant's guilt was faulty. There are other points, as for example, whether the complainant was a resident of New Jersey at the time of the inception of the proceedings, which we feel are unnecessary, in view of the opinion herein expressed, to consider.

There is one point raised concerning which we feel we should express our views. This is the admission, over objection, of copies of money orders alleged to have been sent by the prosecutor to the complainant. The following are some of them: "Lockjaw Mrs. S. Porter, 157 A. Madison street, Brooklyn, N. Y. Poker, T. Porter; Lullaby Mrs. S. Porter, 157 A. Madison street, Brooklyn, N. Y. Operate. Thos. Porter; Augment Mrs. Stella Porter, 235 Clifton Place, Brooklyn, N. Y. Embalm, Thomas J. Porter."

The admission of these copies was error. In the first place they were copies. There was no evidence that the originals

had been destroyed. The proper foundation for their reception was not laid. In the second place we think the contents irrelevant. They did not tend to establish the assumption by the prosecutor of the care or maintenance of the children or any duty towards them. The remittances might have been in payment of a debt or a voluntary gift.

The order made by the justice's court is set aside.